Filed 3/24/23  In re K.W. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re K.W., a Person Coming Under the Juvenile Court Law. | B321524 |
| _____ | Los Angeles County |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Super. Ct. No. 18CCJP07954A |
| Plaintiff and Respondent, | |
| v. | |
| P.W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mary E. Kelly, Judge.  Reversed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Amir Pichvai, for Plaintiff and Respondent.

_____

A mother appeals the termination of parental rights over her daughter, K.W., on the basis of improper inquiry and notice under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code § 224 et seq.) (the Act). We reverse due to improper further inquiry.

Section citations are to the Welfare and Institutions Code.

I

The mother has diagnoses of schizophrenia and psychosis. She was in a psychiatric hospital during the final months of her pregnancy. K.W. was born in December 2018. Shortly after, a juvenile court granted an expedited removal order. The Department then filed a section 300 petition that alleged K.W. was at risk of serious harm due to the mother's mental and emotional problems.

The Department's detention report said the Department did not know whether the Act applied because the mother was not capable of providing a statement. The Department interviewed a maternal aunt and the maternal grandmother in December 2018, but there is no evidence it asked them about Indian ancestry. The Department identified the maternal grandfather as one T.W. The Department tried to call him three times, but the line would disconnect and the calls would fail.

The mother said she did not know the identity of K.W.'s father. She also told a social worker the father was a celebrity musician and told a therapist the father was a different celebrity musician.

The court held a detention hearing on December 17, 2018. No one mentioned the Act.

The Department interviewed the maternal grandmother again in January 2019. The Department later said in a report:

"The [maternal grandmother] denied Native American Ancestry." That report then cited a May 7, 2015 order from a case involving the mother and her sister when they were minors. That order found the Act did not apply. In its appellate briefing, the Department concedes "there was no initial inquiry," so this notation about the maternal grandmother denying ancestry apparently is from the earlier case.

The maternal grandmother has a sister, C.B., who lives in Indiana. On January 10, 2019, C.B. spoke to the Department. There is no evidence the Department asked about Indian ancestry at that time.

On March 18, 2019, the court held a jurisdiction hearing. The mother was present. The court addressed the issue of whether the mother needed a guardian ad litem. The mother's counsel said a guardian ad litem was unnecessary because the mother understood the nature of the proceedings and could assist counsel. Counsel said the mother was able to discuss potential placement options for her daughter. The court asked the mother several questions and found the mother was competent to participate without a guardian ad litem.

The court sustained the petition. No one mentioned the Act or asked the mother about Indian ancestry.

After one foster placement, the Department placed the child with the child's maternal great-aunt, C.B., and C.B.'s husband, who are the prospective adoptive parents.

On July 14, 2021, the Department asked C.B. about Indian ancestry. C.B. said her great-grandmother, F.B., "was Cherokee tribe, from Louisiana." According to C.B., F.B. was not a registered member.

On August 12, 2021, the court said there was "sufficient information to put the court on notice" of an issue under the Act and the court told the Department to send notices. On August 30, 2021, the Department sent written notices to the Bureau of Indian Affairs, the Secretary of the Interior, and three tribes: the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians in Oklahoma.

Although the Department identified the maternal grandfather as T.W., the notices listed someone named U.G.G. as the maternal grandfather. This name is not in other parts of the record. The mother noted this discrepancy on appeal, but the Department did not explain it.

The notices correctly listed F.B.'s name, but she was listed as the child's maternal great-grandfather. The notices said the maternal grandmother's birth date and address were unknown. An earlier record in this case lists her birth date and a mailing address. The notices did not include the father because his identity is unknown.

The Eastern Band of Cherokee Indians responded and said, based on its tribal registry and the information the Department sent, K.W. was neither registered nor eligible to register as a member.

The Cherokee Nation responded and said, "with the limited information provided," it could only say that the names in the notice were not registered citizens of the tribe. The tribe noted that the father was unknown and said it could not make a determination about whether K.W. was an Indian child without information on one of the biological parents.

The third tribe did not respond.

On November 19, 2021, the court ordered the Department to contact C.B. and the maternal grandmother to verify the Department had contacted all the potentially relevant tribes.

On March 7, 2022, C.B. said she had given all the information she knew and she did not know of any other family members to ask.

On April 13, 2022, the court asked the Department to make sure no one had F.B.'s birth date because that information was not on the notices.

In a June 13, 2022 report, the Department said a social worker followed up with C.B. on March 9, 2022. (As explained, the Department earlier reported a March 7, 2022 conversation with C.B. It is unclear if the Department had a new conversation on March 9 or whether this date is incorrect.)

The report says C.B. did not know F.B.'s birth date. Nor did C.B. have contact information for the maternal grandmother, who was homeless and did not communicate with the family. The report also repeats C.B.'s July 2021 statements that F.B. was related to the Cherokee tribe but was not a registered member. Then it says (we have not edited this sentence other than using initials for the name), "After further investigation the Cherokee Nation did confirmed that [F.B.] a member." No one discussed this confusing sentence in the trial court or in the appellate briefs. The sentence appears to mean F.B. was a member. Maybe it is a typo.

On June 28, 2022, the court found there was no reason to know the child was an Indian child and terminated the mother's parental rights.

5

## II

The Department concedes and we agree that it did not make an initial inquiry. In the first months of this case, the Department spoke to the mother, the maternal aunt, the maternal grandmother, and C.B., but it did not ask about ancestry. (§ 224.2, subds. (a) [Department and court have an affirmative and continuing duty to inquire] & (b) [initial inquiry duty includes asking parents and extended family members].)

The Department's duties went beyond initial inquiry. If there is reason to believe a child is an Indian child, the Department must make further inquiry. There is reason to believe if information suggests a parent or the child is a member or may be eligible for membership in an Indian tribe. (§ 224.2, subd. (e).) As the Department correctly concedes, C.B.'s statement gave it an "attenuated reason to believe the child could be an Indian child." The Department therefore needed to make further inquiry.

Further inquiry helps to determine whether there is reason to know a child is an Indian child. (§ 224.2, subd. (e).) Having a reason to know then triggers formal notice requirements to tribes. (*Id.*, subd. (f).)

Further inquiry requires particular communications with three main groups: the family, government agencies, and tribes. (§ 224.2, subd. (e).)

Further inquiry of family means interviewing the parents and extended family members to gather additional information. (§ 224.2, subd. (e).) This additional information is the child's name, birthdate, and birthplace; the name of the tribe in which the child is a member or may be eligible for membership; the names, addresses, and dates and places of birth and death of the

6

child's biological parents, grandparents, and great-grandparents; and "tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information . . . ." (§ 224.3, subd. (a)(5).)

Further inquiry also involves contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership. (§ 224.2, subd. (e).)

Further inquiry of tribes means contacting the tribes and any other person that may reasonably be expected to have information about the child's membership, citizen status, or eligibility. At a minimum, contact with a tribe must include phone, fax, or email contact with the tribe's designated agent for receipt of notices under the Act. Contact must include sharing information that the tribe says is necessary to make a membership or eligibility determination, as well as information on the current status of the child and the case. (§ 224.2, subd. (e).)

The Department's further inquiry was deficient.

The Department's inquiry was insufficient as to the family. It could and should have asked the mother and the maternal aunt. It also should have gotten information about family members' names, birth dates, and places of birth and death. Even when the Department inquired of C.B., there is no evidence it asked for this information for all relevant family members as the statute requires.

The Department incorrectly says the mother's mental illness means it did not need to inquire of her. The mother spoke to the Department and attended hearings throughout the case.

She answered the court's questions about her competency and could communicate with her attorney. After questioning the mother, the court made an express finding she was competent to participate. On this record, it appears the mother *could* have answered inquiry questions. The mother's mental health may have affected the weight of her responses, but it did not negate the duty to inquire.

Furthermore, in light of the Department's position that the mother could not competently answer questions about ancestry, it was essential to inquire of extended family. This family included the maternal aunt and maternal grandmother, whom the Department interviewed. The Department incorrectly says its failure to inquire was justifiable because, "[n]o relatives ever appeared in court." Inquiry duties do not turn on extended family members' presence in court.

The Department's further inquiry of tribes was also faulty. The statute contemplates something less than formal notice to tribes as the method of further inquiry. (See § 224.2, subd. (e) [listing telephone, fax, and email as potential contact methods].) But the Department's effort at further inquiry here was formal notices. If the notices were correct, they could have satisfied further inquiry. But they had incorrect and missing information. They included the wrong name for the maternal grandfather. This unexplained issue is prejudicial, for if ancestry flowed through the maternal grandfather, the tribes were not given necessary information they would need to determine eligibility.

The notices had other issues that should be corrected, including listing the wrong relationship between F.B. and the child and omitting known information like the maternal grandmother's birth date.

8

The Department does not deny its errors or explain them, but instead disclaims responsibility for providing accurate information to tribes. The Department is correct that it lacked "reason to know," which is the standard that requires formal notices. But the Department is incorrect that this means the notice errors here were insubstantial. Further inquiry requires contact with the tribes. When the Department makes this further inquiry through formal notices, this contact is meaningful only if the Department provides tribes with accurate and complete information. It failed to do so here.

DISPOSITION

The judgment is conditionally reversed. On remand, the Department must comply with its further inquiry obligations under section 224.2. If further inquiry does not give reason to know the child is an Indian child, the judgment shall be reinstated.

WILEY, J.

We concur:

GRIMES, Acting P. J.

VIRAMONTES, J.

9